IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| EUGENIO S. MATHIS, as personal representative of THE ESTATE OF ABELARDO MONTES, deceased,<br><br>    Plaintiff,<br><br>v.<br><br><br>WEXFORD HEALTH SOURCES, INC.; STATE OF NEW MEXICO; NEW MEXICO CORRECTIONS DEPARTMENT; CORECIVIC of TENNESEE, LLC.; DAVID JABLONSKI, SECRETARY OF CORRCTIONS, in his individual capacity; CASAUNDRA LACKEY, HEALTH SERVICES ADMINISTRATOR, in her individual capacity; ORION STRADFORD, BUREAU CHIEF, in his individual capacity; STEVE MADRID, GRIEVANCE OFFICER, in his individual capacity; HEIDI JUESON, GRIEVANCE OFFICER, in her individual capacity; DR. DIETER DENNIG, MEDICAL DIRECTOR/FACILITY MEDICAL DIRECTOR, in his individual capacity; DR. JOSE ANDRADE, in his individual capacity; and JOHN DOES 1-10 in their individual and official capacities, (employees, staff, agents of WEXFORD HEALTH SOURCES, INC.; STATE OF NEW MEXICO; NEW MEXICO CORRECTIONS DEPARTMENT; CORECIVIC of TENNESEE, LLC, respectively).<br><br>    Defendants. | No. _____<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Eugenio S. Mathis, as Personal Representative of the Estate of Abelardo Montes, deceased ("Plaintiff"), by his attorneys, Sandoval Firm and Collins & Collins, P.C., and pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202, brings this action (the "Complaint") to redress violations of Mr. Montes' Eighth and Fourteenth Amendment rights under the United States Constitution, and alleges, as follows:

1

**PRELIMINARY STATEMENT**

1. While housed at Northwestern New Mexico Correctional Facility ("NWNMCF"), New Mexico Corrections Department ("NMCD"), Wexford Health Sources, Inc. ("Wexford"), and CoreCivic of Tennessee, LLC ("CoreCivic"), acting through their respective employees, staff, agents and assigns named above in their individual capacities, knew of Mr. Montes' history of pneumonia and broken ribs and with wanton, willful and deliberate indifference ignored Mr. Montes' medical grievances, ignored National Commission on Correctional Health Care ("NCCHC") emergent medical condition, ignored the American Correctional association ("ACA") guidelines on treating emergent medical condition and otherwise completely failed to take action within its authority to protect the health of Mr. Montes.

2. The result of DEFENDANTS' deliberate indifference to Mr. Montes' serious medical condition was death. Defendants in their deliberate medical neglect of Mr. Montes engaged in cruel and callous behavior with the intent to inflict emotional distress upon Mr. Montes. The intentional and callous behavior achieved the goal of causing severe emotional distress to Mr. Montes before his death.

3. Additionally, the abovenamed Defendants, engaged in a conspiracy to violate Mr. Montes' Eighth Amendment protections against cruel and unusual punishment by deliberately denying Mr. Montes necessary medical care.

4. Mr. Montes' injuries were, in part, the result of Wexford and CoreCivic's widespread pattern and practice of failing to provide constitutionally adequate medical care and effectively denying patients access to medical care and NMCD's longstanding pattern and practice of complicity in the recklessness and deliberate indifference of its medical contractors in their failure to provide constitutionally adequate medical care to NMCD inmates.

5. The actions and inactions of Defendants violated Mr. Montes' rights secured by 42 U.S.C. § 1983 under the Eighth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

6. This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

7. Subject matter jurisdiction in conferred by 28 U.S.C. §§ 1331 and 1343(a).

8. This Court has personal jurisdiction over each of the entities and individual Defendants because, upon information and belief, all Defendants are domiciled in the State of New Mexico (the "State") and/or have substantial contacts in the State of New Mexico and purposefully availed themselves of conducting business in New Mexico.

9. Venue is proper here under 28 U.S.C. § 1391(b)(2), because, upon information and belief, a majority of the Defendants reside in this judicial district and the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

10. Plaintiff need not exhaust any administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), because Mr. Montes is not currently incarcerated.

## PARTIES

11. PLAINTIFF, Eugenio Mathis, was appointed Personal Representative of the Estate of Abelardo Montes, deceased, (hereinafter "Abelardo Montes") on December 8, 2020, and is a resident of San Miguel County, New Mexico (hereinafter "PLAINTIFF").

12. PLAINTIFF brings this action as the Personal Representative of the Estate of Abelardo Montes, deceased.

13. Abelardo Montes was at all times relevant to this Complaint an inmate at Northwestern New Mexico Correctional Facility (NWNMCF). During all relevant times, he was

in the custody of NMCD, housed at NWNMCF in Cibola County, Grants, NM and NMCD, Wexford and CoreCivic had a duty to provide him with medical care and treatment consistent with applicable and prevailing standards of medical care.

14. Defendant Wexford is a foreign profit corporation registered to do business in New Mexico, whose registered agent for service of process is in Hobbs, New Mexico. Wexford, by the terms of Professional Services Contract #20-770-1200-0043 ("PSC"), was contracted by NMCD for the purposes of providing medical care to inmates in the NMCD prison system, including Mr. Montes.

15. Under the PSC, Wexford was acting as the apparent and actual agent, servant, and contractor of NMCD and was responsible for the care, health, safety, and proper medical treatment of all detainees in NMCD's facilities, including Mr. Montes. Pursuant to the PSC, NMCD adopted Wexford's policies, practices, habits, customs, procedures, training, and supervision as its own, and Wexford adopted NMCD's policies, practices, habits, customs, procedures, training, and supervision as its own. Wexford acted by and through its employees, staff, agents and assigns who are named in their individual capacities.

16. Defendant CoreCivic is a Foreign Limited Liability Company that is under contract to manage and operate NWNMCF. CoreCivic's registered agent is in Albuquerque, New Mexico.

17. Accordingly, CoreCivic was acting as the apparent and actual agent, servant, and contractor of NMCD and was responsible for the care, health, safety, and proper medical treatment of all detainees in NMCD's facilities, including Mr. Montes. Pursuant to CoreCivic's contract with NMCD as a subcontractor under the GSC, CoreCivic adopted NMCD's policies, practices, habits, customs, procedures, training, and supervision as its own, and NMCD adopted CoreCivic's policies, practices, habits, customs, procedures, training, and supervision as their own.

18. At all material times, Wexford and CoreCivic acted through its owners, officers,

directors, employees, agents or apparent agents, including, but not limited to, administrators, management, nurses, doctors, technicians and other staff, and is responsible for their acts or omissions pursuant to the doctrines of *respondeat superior*, agency and/or apparent agency.

19. At all relevant times, NWNMCF was operated by NMCD, an agency of the State of New Mexico.

20. NMCD retains ultimate authority over NWNMCF and NWNMCF is operated in accordance with NMCD rules, policies, and procedures.

21. NMCD is responsible for contracting of medical services for all NMCD facilities including LCCF.

22. At all material times, NMCD acted through its owners, officers, directors, employees, agents or apparent agents, including, but not limited to, administrators, management, nurses, doctors, technicians and other staff, and is responsible for their acts or omissions pursuant to the doctrines of *respondeat superior*, agency and/or apparent agency.

23. David Jablonski was serving as the Secretary of Corrections at all times relevant to this Complaint. As the Secretary of Corrections, Mr. Jablonski oversees prison operations, including NMCD's duty to provide a safe environment at its facilities, including NWNMCF, and to ensure that inmates have access to adequate health care.

24. Casaundra Lackey was serving as the Health Services Administrator ("HSA") for NMCD at NWNMCF at all times relevant to this complaint. As HSA for NMCD, Ms. Lackey maintained direct clinical oversight of independent medical contractors, ensuring that NMCD contractors provided adequate care to NMCD inmates, including those at NWNMCF and specifically Mr. Montes.

25. Orion Stradford was serving as the NMCD Bureau Chief at all times relevant to this Complaint. As NMCD Bureau Chief, Mr. Stratford was responsible for monitoring the work of independent contractors, including Wexford and CoreCivic, and acted as NMCD's supervisor over its

independent contractors.

26. Steve Madrid was the individual acting on behalf of NMCD in charge of the NMCD Grievance Process, including the appeals process, at all times relevant to this Complaint. As the individual in charge of NMCD's Grievance Process, Steve Madrid serves as the "gatekeeper" between inmates and their access to adequate healthcare. As the gatekeeper, if Mr. Madrid does not responsibly manage the grievance process, inmates have no way of accessing necessary, proper, and competent medical care from its medical contractors, which in this case was Wexford. During his tenure, with very few exceptions, Mr. Madrid never found in favor of an inmate medical grievance.

27. Heidi Jueson was the individual acting on behalf of NMCD at NWNMCF as the Grievance Officer. In accordance with practice, Ms. Jueson would have directed questions regarding formal medical grievances to the Health Services Administrator ("HSA") for NWNMCF. If Ms. Jueson does not responsibly manage the grievance process, inmates have no way of accessing necessary, proper, and competent medical care from its medical contractors, which in this case was Wexford.

28. NMCD governs, operates, and maintains NWNMCF, while independent contractors carry out discrete duties at the discretion of NMCD.

29. NMCD Defendants have a duty to reasonably and prudently operate the medical facility within NWNMCF.

30. By the terms of the PSC, NMCD maintained authority over Wexford through its authority to terminate the contract with or without cause as indicated by the PSC.

31. Any of the above named NMCD individuals can intercede on behalf of NMCD if independent contractors are not appropriately caring for NMCD inmates.

32. Any of the above named NMCD individuals can intercede on behalf of an inmate to act on a medical grievance.

33. None of the above named NMCD individuals interceded to protect Mr. Montes from the deliberate indifference of Wexford.

34. Defendant Dr. Dieter Dennig was at all times relevant to this complaint the medical director/facility medical director at NWNMCF. Dr. Dennig was made aware of Mr. Montes' condition on November 7, 2020 and ordered that he be placed in isolation and changed his medications but failed to evaluate, treat and transfer Mr. Montes for further treatment.

35. Defendant Dr. Jose Andrade was at all times relevant to this complaint an employee of Wexford working at NWNMCF. Dr. Andrade was made aware of Mr. Montes' condition on November 7, 2020 and failed to refer or evaluate Mr. Montes for further treatment.

36. At all times relevant to this Complaint, each of the abovenamed Defendants were employees and/or agents of a New Mexico state-run entity or a private medical service responsible for treating State prisoners, a task which was ultimately the responsibility of the State. Accordingly, all Defendants were acting under color of state law at all relevant times.

37. All individually named defendants are sued in their individual capacity.

## FACTUAL BACKGROUND

**I. DESPITE MR. MONTES BEING DIAGNOSED WITH CRACKED RIBS AND A PUNCTURED LUNG, IT TOOK MORE THAN A MONTH BEFORE HE WAS FINALLY TRANSFERRED TO A HOSPITAL, WHERE HE SUBSEQUENTLY DIED.**

38. At all times relevant to this complaint, Abelardo Montes was a 54-year-old man.

39. On September 28, 2020 Mr. Montes slipped and fell at NWNMCF.

40. Mr. Montes presented to Wexford Health for injuries from the fall. He was diagnosed with cracked ribs and a possible punctured lung.

41. Mr. Montes was advised he would have to be taken to an outside medical provider for evaluation and treatment of his injuries from the fall.

42. At the time a Tort Claim Notice was sent in this case, November 4, 2020, Mr. Montes had still not been treated for his injuries from the fall, despite his multiple filed complaints. The complaints were ignored.

43. Mr. Montes presented to Wexford Health for the complaints of dizziness and cough on November 7, 2020. He was noted to have temperature of 102.4 and an oxygen saturation of 89%. These levels are suggestive of severe pneumonia. **Mr. Montes also had hypotension with blood pressure of 66/42 mmHg.**

44. Severe pneumonia and hypotension were exacerbated by Mr. Montes' diabetes mellitus and hypertension of the coronary artery.

45. These additional risk factors should necessitate early referral and admission to a designated hospital ward or intensive care unit for timely evaluation and appropriate management of severe pneumonia.

46. NMCD Medical Providers failed to refer Mr. Montes in a timely manner.

47. Due to the delay in the transfer to a hospital on 11/07/2020 and failure to initiate appropriate management, Mr. Montes had rapid deterioration to severe sepsis with septic shock secondary to acute viral pneumonia complicated by post-viral bacterial pneumonia, adult respiratory distress syndrome, acute hypoxic and hypercapnic respiratory failure, acute renal failure with hyperkalemia, hyperphosphatemia and hypocalcemia, mixed metabolic and respiratory acidosis, severe thrombocytopenia, atrial fibrillation with rapid ventricular rate and hypoxic encephalopathy.

48. Mr. Montes died on 11/13/2020 and cause of death was noted as COVID-19 infection with multiorgan failure.

49.     The delay in providing adequate medical care and management for pneumonia and broken ribs was grossly negligent and reckless given his vital signs.

## II. WEXFORD DEMONSTRATED A PERSISTENT AND WIDESPREAD PATTERN AND PRACTICE OF DELIBERATE INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS OF INMATE PATIENTS UNDER ITS CARE

50.     The following cases have been filed against Wexford Health Sources, Inc. Each involves the deliberate indifference to emergent infections and pain. The continuation of these practices by an NMCD medical contractor illustrate NMCD's utter lack of interest or regard for the health and safety of NMCD inmates. Simply put Casaundra Lackey, David Jablonski, Orion Stradford, Steve Madrid and Heidi Jueson, along with their predecessors and successors, have illustrated callous, cruel and deliberate indifference to the serious medical needs of NMCD inmates. This deliberate indifference was a moving force leading to the injuries of Mr. Montes and represents a continuing threat to all NMCD inmates:

a. Martin v. New Mexico Corrections Department, Wexford Health Sources, Inc., et al, filed 10/19/2021, failure to diagnose and treat emergent infection, failure to refer to an outside provider in a timely manner resulting in osteomyelitis/discitis with partial vertebral collapse, kyphosis and severe sepsis

b. Ayala v. Wexford Health Sources, New Mexico Corrections Department, et al, filed 10/27/2021, failure to diagnose and treat emergent infection, failure to refer to an outside provider in a timely manner resulting in infective endocarditis, severe sepsis secondary to presumed bacteremia, multiple pulmonary septic emboli, splenic infarct and multiorgan failure (acute heart failure and acute kidney injury) with lengthy hospitalization.

c. Jimenez v. New Mexico Corrections Department, Wexford Health Sources, Inc., et al, filed 11/10/2021, failure to diagnose and treat emergent infection, failure to refer to an outside provider in a timely manner resulting in acute aortic valve infective endocarditis, severe sepsis, acute aortic regurgitation, pulmonary edema, elevated LFTs, heart failure with reduced ejection fraction, presumed bacteremia, troponinemia likely due to demand ischemia, bilateral pulmonary edema leading to death.

d. Hallum v. New Mexico Corrections Department, Wexford Health Sources, Inc, et al, filed 05/06/2022, failure to diagnose and treat emergent infection, failure to

        refer to an outside provider in a timely manner resulting in endocarditis (heart infection), multiple hospitalizations and multiple heart surgeries.

    e.    Melendrez v. New Mexico Corrections Department, Wexford Health Sources, Inc. et al, filed 07/05/2022, failure to diagnose and treat emergent infection, failure to refer to an outside provider in a timely manner resulting in long-term ear infection, leading to permanent hearing loss.

51.    Upon information and belief, Wexford's widespread failure to refer prisoners for off-site medical care was, in large part, financially motivated, as Wexford was contractually obligated to pay $0.00 for any hospitalization lasting 24 hours or more.

52.    Upon information and belief, Wexford paid $0.00 for numerous prisoners' medical bills even though their hospitalizations were extensive. Evidently, this fee structure incentivized Wexford to refrain from referring prisoners for off-site care unless and until there was a substantial certainty that the prisoners would require more extensive hospital stays.

53.    The preceding cases, among others, also establish that Wexford was on notice of these widespread unconstitutional practices prior to Mr. Montes' injuries and thereby knew or should have known that additional safeguards should have been put in place to address patients' signs of serious medical and mental health conditions.

54.    Accordingly, it can be inferred that Wexford intentionally failed to report, diagnose, and treat these serious warning signs despite the known and obvious risk to patient safety.

55.    Wexford's widespread practice of failing to report, diagnose, and treat the warning signs of serious medical and mental health conditions shares a close factual relationship with the events in Mr. Montes' case, and accordingly, the widespread practice was the moving force behind his injuries and death.

56.    Significantly, Wexford personnel ignored Mr. Montes' cracked ribs for almost a month, possible ruptured lung, temperature of 102.4, oxygen saturation of 89%, and **hypotension**

**with blood pressure of 66/42 mmHg** which establishes a pattern and practice of insufficient reporting, diagnoses, and treatment of serious medical conditions.

57. As such, Wexford's policy and practice of failing to report, diagnose, and treat warning signs of serious medical and mental health conditions proximately caused Mr. Montes' injuries.

### III. MEDICAL GRIEVANCE OBSTRUCTION

58. Upon information and belief, Defendant Steve Madrid and Heidi Jueson are ultimately responsible for the NMCD medical grievance system.

59. Mr. Montes filed numerous grievances, health services requests, and informal complaints at NWNMCF.

60. There is a long-standing pattern of ignoring medical grievances on the part of NMCD and its contractors. NMCD does not track the number of medical grievances filed against individual medical personnel. Nor does NMCD track medical grievances filed for specific medical issues such as osteomyelitis and sepsis. The current NMCD HSA Wence Asonganyi testified by deposition on December 13, 2022 that no remedial action has been taken against any medical contractor employee or staff based upon a medical grievance or even numerous medical grievances.

61. HSA Wence Asonganyi testified further that the HSA is not involved in the medical grievance process which means that the only people involved in the medical grievance process are correctional personnel and administrators with no medical licensing. In short, medical grievances are reviewed and ruled upon by unlicensed and medically untrained NMCD personnel.

62. Finally, the current HSA Wence Asonganyi testified he does not know how grievances related to healthcare noted on the American Correctional Association audits are defined. Specifically, he does not know if the numbers related to informal complaints, formal

11

grievances or grievance appeals.

## IV.   DAMAGES SOUGHT

63.   The grossly negligent, reckless, and deliberately indifferent refusal of medical care for Mr. Montes' emergent condition lead to his death.

64.   As a direct result of Defendants' unlawful conduct, Mr. Montes endured tremendous pain, injuries, anguish, suffering, and loss of chance entitling him to general and special compensatory damages.

65.   Further, Mr. Montes is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, in addition to pre-judgment interest and costs as allowed by federal law.

66.   Plaintiff is also entitled to punitive damages against NMCD and Wexford, as their actions were done with malice or, minimally, with reckless indifference to Mr. Montes' federally protected rights.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
**8th and 14th Amendments to the U.S. Constitution**
**Deliberate Indifference to Serious Medical Need (42 U.S.C. § 1983)**
**(against Wexford, CoreCivic, NMCD, David Jablonski, Orion Stradford, Steve Madrid, Heidi Jueson, Casaundra Lackey, Dr. Dieter Dennig, Dr. Jose Andrade, and Doe Doctors 1-2 in their individual capacities)**

67.   Each paragraph of this Complaint is incorporated as if fully restated herein.

68.   The abovenamed Defendants each possessed responsibility for the decisions that resulted in the violation of Mr. Montes' constitutional right to be free from cruel and unusual punishment regarding the deliberate indifference to his serious medical needs while in NMCD custody, as described more fully above.

69.   These Defendants were aware of and deliberately disregarded the substantial risk of harm to Mr. Montes that would ensue because of their failures to provide him with

12

constitutionally adequate medical care, as described more fully above. Among other things, these Defendants were made aware of Mr. Montes' substantial risk of harm due to his broken ribs, possible punctured lung and deteriorating vital signs.

70. The deliberate indifference of the abovenamed Defendants caused Mr. Montes to experience worsening, extensive, and unnecessary pain (first harm) and suffer from a delayed diagnosis of sepsis (second harm), which resulted in a diagnosis of severe sepsis and death.

71. Mr. Montes' harms were sufficiently serious injuries that a reasonable doctor or patient would find them important and worthy of immediate treatment. Without treatment, Mr. Montes' worsening severe pain caused him to lose the ability to take care of his most basic needs so that he could not even stand or consume food and water. His subsequently diagnosed medical conditions were life-threatening.

72. The abovenamed Defendants are not shielded by qualified immunity for their deliberate indifference to Mr. Montes' serious medical needs because of the well-documented 10th Circuit precedent notifying medical and prison personnel that the Eighth Amendment is violated when such personnel fail to take reasonable measures to provide a patient with access to medical attention and/or deny medical care to a patient with serious medical needs, as occurred in Mr. Montes' case with each of the Defendants named herein. *See, e.g., Sealock v. Colorado,* 218 F.3d 1205 (10th Cir. 2000) (confirming that prison personnel violate the Eighth Amendment when a prisoner complains of chest pain, a sign of medical emergency, yet prison personnel delay taking him to a hospital, even if the delay is only several hours).

**SECOND CLAIM FOR RELIEF:**
**8th and 14th Amendments to the U.S. Constitution**
**Policy & Practice of Denial of Medical Care (42 U.S.C. § 1983)**
**(against Wexford, CoreCivic, NMCD, David Jablonski, Casaundra Lackey, Orion Stradford, Steve Madrid, Heidi Jueson, Dr. Dieter Dennig and Dr. Jose Andrade)**

73. Each paragraph of this Complaint is incorporated as if fully restated herein.

74. As a private corporation acting pursuant to its agreement with NMCD to provide medical services to New Mexico State prisoners, Wexford was at all times relevant to the events described in this Complaint acting under color of law and, as the provider of healthcare services to prisoners incarcerated at NWNMCF, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by employees and agents of Wexford and NWNMCF/NMCD.

75. Mr. Montes' injuries were proximately caused by policies and practices of Wexford and NMCD (acting through the individually named Defendants).

76. Wexford and NMCD by and through its employees and staff, maintains a policy, practice, and custom of under-reporting the severity of medical and mental health emergencies and denying appropriate medical and mental health care to prisoners.

77. At all times relevant to this Complaint, Wexford and NMCD by and through its employees such as the NMCD HAS David Selvage, Orion Stradford and Steve Madrid had notice of a widespread practice by its employees and agents at NMCD facilities including NWNMCF under which prisoners with serious medical conditions, such as Mr. Montes, were routinely denied access to proper or sufficient medication and medical attention. Upon information and belief, it was common to observe prisoners of NWNMCF with clear symptoms of serious medical and/or mental concerns whose requests for medical care were routinely denied or completely ignored. Upon information and belief, a significant portion of these denials of medical and mental health care resulted in substantial injury or death.

78. More specifically, there was a widespread practice under which employees and agents of Wexford and NMCD, including correctional officers and medical personnel, failed or

14

refused to: (1) report, diagnose, and properly examine and treat prisoners with serious medical and/or mental health conditions, including failing to provide proper medications to prisoners with serious medical and/or mental health conditions; (2) respond to prisoners who requested medical and/or mental health services; (3) respond to prisoners who exhibited clear signs of medical and/or mental health needs or illness; (4) adequately document and communicate the medical and mental health needs of prisoners to the appropriate correctional officers and/or medical or mental health staff; or (5) timely refer prisoners for emergency or other offsite medical services.

79. Additionally, there was a widespread practice under which Wexford personnel severely understaffed its medical and mental health facilities and failed adequately to train and supervise its personnel on necessary medical and mental health procedures.

80. These widespread practices were allowed to proliferate because Wexford directly encouraged, and was the moving force behind, the specific misconduct at issue. Wexford also failed to adequately train, supervise, and control correctional officers and medical personnel by failing to adequately punish and discipline prior instances of similar misconduct, thereby directly encouraging future abuses like those which harmed Mr. Montes.

81. Wexford knew of the substantial risk of serious or fatal consequences that could be caused by its unconstitutional policies, practices, customs, failures to train, and failures to supervise, as occurred in Mr. Montes' case.

82. Wexford and NMCD through its employees and staff are sued herein for maintaining these policies, practices, and customs; for failing to train and supervise; and for ratifying its employees' and agents' misconduct, all of which amounts to deliberate indifference to prisoners' serious medical and/or mental health needs.

83. Defendants Selvage, Jablonski, Stradford, and Madrid persistently refused to refer patients to third-party medical providers, failed to oversee and ensure inmates received access to adequate medical care, failed in the oversight of independent medical providers, which resulted in the failure to properly train, recognize, and treat emergent infections, including osteomyelitis.

84. Defendants Selvage, Jablonski, Stradford, and Madrid had oversight authority, but failed to perform any oversight, allowing these patterns and practices to occur.

85. These policies and conduct were the moving force behind the violations of Mr. Montes' constitutional rights and his injuries. Mr. Montes' injuries were caused by employees and contractors of NMCD and Wexford, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of Wexford while engaging in the misconduct described in this Complaint.

86. Upon information and belief, Wexford maintained these policies and practices in order to maximize profit and without regard to its constitutional and medical obligations to NMCD prisoners who were entrusted to Wexford's care.

87. Wexford is not shielded by qualified immunity for its unconstitutional policies and practices, because private companies and their private employees are never entitled to qualified immunity, even when employed doing correctional work. *See, e.g., Phillips v. Tiona*, 508 Fed. Appx. 737, 751–52 (10th Cir. 2013).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief against Defendants, jointly and severally:

(a) Monetary damages against Wexford, CoreCivic, NMCD and individual Defendants sued under 42 U.S.C. § 1983 in their individual capacities in an amount to be determined at trial to compensate Plaintiff for the injuries he sustained as a result of the events and conduct alleged herein;

(b)   Punitive damages against all Defendants in an amount to be determined at trial;

(c)   Statutory interest on any and all damages awarded to Plaintiff;

(d)   Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(e)   Such other and further relief as the Court may deem just and proper, including injunctive and declaratory relief.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues in this case so triable.

Dated: November 6, 2023

Respectfully submitted,

SANDOVAL FIRM

By: __/s/   Richard A. Sandoval__
    Richard A. Sandoval
    1442-D S. St. Francis Drive
    Santa Fe, NM 87505
    (505) 795-7790
    rick@sandovalfirm.com

-and-

COLLINS & COLLINS, P.C.

By: __/s/ Parrish Collins__
    Parrish Collins
    P.O. Box 506
    Albuquerque, NM 87103
    (505) 242-5958
    parrish@collinsattorneys.com

*Attorneys for Plaintiff*